J-A10043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
            v.                     :
                                :
                                :
KAREEM ABDUL HARPER-EL       :
                                :
          Appellant        :     No. 1796 EDA 2023

Appeal from the Judgment of Sentence Entered June 30, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000425-2019

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 3, 2025**

Appellant, Kareem Abdul Harper-El, appeals from the judgment of sentence entered following the jury verdicts finding him guilty of two counts each of robbery and burglary, one count each of aggravated assault, conspiracy to commit burglary, carrying a firearm without a license, and criminal use of a communications facility, and six counts of theft by unlawful taking, and a bench conviction of possession of a firearm though prohibited.[1] Appellant raises two suppression issues, a discovery issue and a sentencing claim. We affirm.

The trial court set forth the operative facts from trial, as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(i)-(ii), 3502(a)(1)(i)-(ii), 2702(a)(1), 903, 6106(a)(1), 7512(a), 3921(a), and 6105, respectively.

On August 8, 2018, the Pennsylvania State Police ("PSP") received a call for a home invasion robbery that occurred [at a residence in the 500 block of] Baltimore Pike, Pennsbury Township, Chester County. Responding troopers learned that the victim, T.F., had been physically assaulted inside his residence and had suffered significant injuries to his face, left ear, back of his head, and right hand. T.F. reported to police that on August 7, 2018 he had solicited a prostitute by the name of 'Bree' who was later determined to be co-defendant, Renada Myers. Ms. Myers had contacted T.F. earlier in the day via text message to solicit a meeting at T.F.'s home so that she could provide sexual services. Ms. Myers and T.F, had met previously for the same purpose. Ms. Myers arrived at T.F.'s home at approximately 11:00 p.m. and used the bathroom before engaging with T.F. in his bedroom. After getting paid, Ms. Myers used the bathroom again before being walked to the front door by T.F. who was wearing only a T-shirt. The evidence presented at trial showed that[,] while Ms. Myers was in the bathroom the second time, she was messaging with Appellant to let him know she was getting ready to leave and that he should be ready to enter T.F.'s home.

T.F. reported that[,] as Ms. Myers exited, two black men forced their way into his home. One of the men, later determined to be Appellant, forced T.F. to lay on his stomach in the kitchen and began hitting him in the head and neck with a gun while yelling at T.F. to hand over his money and jewelry. During this time, the other unknown male ransacked T.F.'s home. Thereafter, Appellant found T.F.'s gun safe and forced T.F. to open it by threatening to shoot him in the head. When T.F. opened the safe, the unidentified male removed T.F.'s guns from the safe. While T.F. was in the rear bedroom, with his wrists and ankles bound with extension cords, he overheard Appellant and the other male making plans to kill him and dispose of his body. Upon hearing this, T.F. managed to loosen his restraints and escape through a bedroom window.

T.F. testified that during the robbery the following items were stolen: several handguns, six watches, $200.00 cash, a watch case, an iPhone, and keys. The house was processed for evidence by PSP, and fingerprints were found on the gun safe that had been handled by the assailants. On August 11, 2018, two days after the home invasion robbery, the Philadelphia Police Department conducted a traffic stop on a stolen vehicle operated by Appellant. During that traffic stop, the Philadelphia Police Department recovered a Ruger .380 pistol from the vehicle. As a result, Appellant was arrested, charged, taken into custody, and housed

at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia. Prior to Appellant being tried in Philadelphia County, he filed a suppression motion objecting to the admission of the Ruger found in the vehicle at the time of his arrest. The Honorable Kai Scott suppressed the admission of the Ruger, and the Philadelphia District Attorney's Office withdrew the firearm charges against Appellant.

When the Ruger's serial number was run, it was identified as one of the handguns stolen during T.F.'s home invasion robbery. On August 14, 2018, six days after the home invasion robbery and three days after Appellant's arrest in Philadelphia, [PSP Corporal] Stefano Gallina obtained a search warrant from a Chester County magistrate for Appellant's phone that had been seized at the time of Appellant's Philadelphia arrest. After a pre-trial hearing related to the robbery, this search warrant was found to be jurisdictionally deficient as Appellant's phone was in CFCF's custody in Philadelphia County.[2]

On August 15, 2018, [Corporal] Gallina interviewed Ms. Myers. During that interview, Ms. Myers identified Appellant as one of the black males who took part in the home invasion robbery. On September 26, 2018, Appellant's fingerprint was identified as one of the fingerprints that was lifted from T.F.'s safe. Additionally, subsequent phone dumps from both Ms. Myer's and Appellant's cell phones provided evidence that they had planned and executed the home invasion robbery.

Trial Court's Rule 1925(a) Opinion, 4/12/24 ("Trial Court Opinion"), 1-4 (internal footnotes omitted). In addition, the trial court noted that the jury was not informed that Appellant had been arrested in possession of a firearm stolen during the robbery. **See id.**, 3 n. 4.

Appellant sought to proceed *pro se*. The request was granted on October 4, 2019. Five successive attorneys were appointed as standby counsel during the pre-trial period. The first four of whom were subsequently granted leave

_____

[2] The propriety of admitting the evidence obtained through Appellant's phone is the subject of Appellant's second issue on appeal.

to withdraw. Attorney Ryan Grace, was the final standby counsel, and pursuant to Appellant's request, was appointed to represent Appellant at trial. Numerous pre-trial motions, including motions to suppress, were litigated before the Honorable Alison Bell Reyer, who filed a 121-page opinion addressing the pretrial motions. *See* Pre-Trial Court's Opinion, 8/4/21 (The "Motions Opinion"). After Appellant opted to waive a jury trial, Judge Royer recused herself and was replaced by the Honorable Ann Marie Wheatcraft. Ultimately, however, Appellant was tried by a jury and judge in a bifurcated trial.

Trial commenced on October 18, 2022. On October 21, 2022, the jury returned its verdict, after which the trial court found Appellant guilty of violating Section 6105 of the Crimes Code. 18 Pa.C.S. § 6105. On June 30, 2023, the trial court imposed an aggregate term of 36 to 72 years' imprisonment, including: consecutive terms of 10 to 20 years on one count each of robbery, burglary and aggravated assault, and a consecutive term of 6 to 12 years on one count of theft. *See* Trial Court Opinion, 8. No further punishment was imposed on the remaining counts. *Id.*

On July 7, 2023, trial counsel filed a motion to withdraw as counsel. On July 10, 2023, counsel filed a notice of appeal. On August 1, 2023, the trial court granted the motion to withdraw as counsel.[3] After counsel was granted

_____

[3] Appellant filed on July 13, 2023, a *pro se* "Motion [for] Modification of Sentence/New Trial," which is a nullity, as it was filed while he was still
*(Footnote Continued Next Page)*

leave to withdraw, the trial court ordered Appellant to file a concise statement of errors to be raised on appeal. **See** Pa.R.A.P. 1925(b). Appellant filed a *pro se* statement on October 18, 2023 and a *pro se* amended statement on December 14, 2023. The trial court filed its opinion on April 12, 2024.[4]

On July 11, 2024, because no brief had been filed by Appellant, this Court remanded the matter for the trial court to determine whether trial counsel had abandoned his client. **See** Order, 7/11/24. On September 3, 2024, the trial court filed its response to our order, which explained that trial counsel had been granted leave to withdraw and new counsel had entered an appearance with the trial court on May 14, 2024, but for what he had believed to be post-sentence proceedings. **See** Trial Court Response to Order, 9/3/24, 1-2. New counsel would enter his appearance in the direct appeal. **Id.**, 2.

Appellant raises the following issues in this appeal:

A.    The Trial Court erred in denying the motion to suppress the arrest warrant affidavit of probable cause.

_____

represented by counsel, making it an impermissible hybrid filing, especially where the notice of appeal filed by counsel divested the trial court of jurisdiction. **See Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super. 2007) (no right to file a *pro se* post-sentence motion while represented by counsel making the filing a nullity); Pa.R.A.P. 1701(a) (providing that "after an appeal is taken … the trial court or other government unit may no longer proceed further in the matter").

[4] On May 13, 2024, Appellant erroneously filed a *pro se* notice of appeal (1331 EDA 2024) from the trial court's Rule 1925(a) opinion. On January 3, 2025, this Court quashed the resulting appeal at 1331 EDA 2024.

B.     The Trial Court erred in failing to suppress the seizure of defendant-appellant's cellphone and by improperly sealing the search warrant.

C.     The Trial Court erred in failing to compel or sanction the Commonwealth to produce records for the cell phones as ordered at the Magisterial District.

D.     The Trial Court erred in the calculation of the prior score for sentencing.

Appellant's Brief, 3.

Appellant's first two claims on appeal address the suppression court's denials of his various suppression motions. As such, our review is:

> limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct.... We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo.*

***Commonwealth v. James***, 69 A.3d 180, 186 (Pa. 2013) *(*quoting ***Commonwealth v. Briggs***, 12 A.3d 291, 320–21 (Pa. 2011)).

In his first issue, Appellant raises a challenge to the veracity of averments concerning his identity as one of the home invasion robbers in the affidavit of probable cause in the arrest warrant. **See** Motions Opinion, 46-58. PSP Corporal Gallina wrote the affidavit based on both the Chester County and Philadelphia County investigations. **See** Affidavit of Probable Cause, 1. Appellant argues on appeal that Corporal Gallina made "repeated misstatements of fact" by averring that Appellant was the alleged "defendant without corroboration. The victim fails to make an identification; however, [Corporal Gallina] repeatedly identifies" him in the affidavit. Appellant's Brief,

9. Appellant avers that this "is clearly a fabrication to arrest" him. *Id.* Appellant also challenges the veracity of Corporal Gallina's references "to the co-defendant Renada Myers making statements, however no statements by Myers directly implicated" him. *Id.* He asserts further that "Myers repeatedly states that [Appellant] was not at the victim's residence; even after [Corporal Gallina's] repeatedly attempting to trick Myers into stating that." *Id.*, 9-10.

There is a distinction "between review of the magistrate's probable cause determination and review of a challenge to the statements in the affidavit itself." *James*, 69 A.3d at 189. The former is a four corners challenge where the only evidence is the affidavit itself. *See* Pa.R.Crim.P. 203(D). The latter is typically referred to as a *Franks*[5] challenge, and requires a defendant to allege "deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof." *James*, 69 A.3d at 188. If a hearing is granted and the defendant proves by a preponderance of the evidence the allegation of perjury or reckless disregard, then the "false material is disregarded; if [the affidavit's] remaining content is insufficient to establish probable cause, the search warrant is voided, and the fruits thereof are excluded." *Id.* (citing *Franks*, 438 U.S. at 156).

> [W]hen a fact in an affidavit is specifically challenged (as opposed to a generic, global challenge to the affidavit's sufficiency), the

---

[5] *See Franks v. Delaware*, 438 U.S. 154, 155-156 (1978) (where the defendant makes a substantial preliminary showing the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit, the Fourth Amendment requires a hearing be held at the defendant's request).

Commonwealth must come forward with evidence elucidating the validity of the fact in question. The affidavit alone is not enough; when its facts are challenged, evidence concerning how those facts were ascertained is often required.

***James***, 69 A.3d at 190.

We do not have before us the question of whether Appellant's allegations were sufficient to warrant a hearing, as a hearing was held at which Corporal Gallina testified. ***See*** N.T. Habeas/Suppression, 1/14/21, 29-82. Appellant limits his challenges to two aspects of the affidavit of probable cause: (1) the identification of him by the victim as one of the two perpetrators; and (2) the reference to "statements" made by co-defendant Myers from which his identity as a perpetrator was inferred. ***See*** Appellant's Brief, 9-10. The suppression court discussed these claims and found them, based on the evidence at the hearing, to be meritless.

With respect to the identification of Appellant, through co-defendant Myers' interviews, the suppression court determined that:

Corporal Gallina conceded that Ms. Myers did not expressly identify [Appellant] by name as one of the people with whom she conspired to commit the home invasion robbery against the alleged victim, T.F., on the night of August 7, 2018.

However, Corporal Gallina testified that during his interviews with Ms. Myers, a) she did not correct Corporal Gallina when he asked Ms. Myers if she knew who, besides [Appellant], entered the alleged victim's home on the night of August 7-8, 2018; b) she related, falsely, that before the robbery she had met [Appellant] on August 7, 2018 at a gas station and they went to the movies together, and that afterwards she went to the alleged victim's home to see if the alleged victim was there; c) she nodded her head and again did not correct Corporal Gallina when he told her that he believed that Defendant or someone else had found out that she was performing sex acts with the victim and that

- 8 -

[Appellant] or someone else had become angry at that fact. The transcript of Corporal Gallina's August 15, 2018 interview with Ms. Myers reflects that Ms. Myers did in fact show Corporal Gallina a picture of [Appellant] on Facebook.

Further, when Corporal Gallina asked Ms. Myers during his August 15, 2018 interview with her whether his theory that [Appellant] or Trel or someone they knew planned and executed the crimes against the victim, Ms. Myers stated, "Yeah and they said they wasn't gonna hurt him. And they was gonna hurt me if I tell. I don't want anything to happen to me."

Finally, the records provided by the two conspirators' cellular service providers show that [Appellant] and Ms. Myers texted each other on the night of the crimes.

We noted earlier that Ms. Myers' express statements concerning the identities of the persons involved in the conspiracy differed from one interview to the next.

Corporal Gallina testified that Ms. Myers' varied responses as to the identity of the perpetrators of this robbery left him with the impression that she was trying [to] hide information from him to protect other people.

Ms. Myers' failure to correct Corporal Gallina's narrative, her admission that she was with [Appellant] immediately prior to the robbery, her statements and actions during their interviews, and her body language in nodding her head when Corporal Gallina suggested that [Appellant] was one of her co-conspirators are all affirmations of the assertion in the Affidavit of Probable Cause that Ms. Myers identified [Appellant] as one of the people who perpetrated this home invasion robbery.

Consequently, Corporal Gallina's statement in the Affidavit of Probable Cause that Ms. Myers identified [Appellant] as one of the perpetrators of this crime is not false.

Further, we note that Ms. Myers' identification of [Appellant] as one of the perpetrators of the robbery was not the sole basis upon which Corporal Gallina arrested [him].

Corporal Gallina testified that in addition to Ms. Myers' identification of [Appellant,] arrested [Appellant] based on the totality of the circumstances, which included Ms. Myers mentioning [Appellant's] name during Trooper Gallina's interview,

the fact that [Appellant] was arrested in Philadelphia with a vehicle registered to Ms. Myers' brother, the fact that [Appellant's] fingerprints were found on the safe inside the alleged victim's residence, from where the guns were stolen, and the cellular call records provided by Ms. Myers' and [Appellant's] service providers.

Motions Opinion, 50-52 (paragraph numbering and record citations omitted). In addition, the suppression court concluded that Appellant misread the affidavit of probable cause in part, and overlooked that the victim described the first perpetrator to enter his home to be wearing a red hooded sweatshirt and Ms. Myers "told Corporal Gallina that when she met up with [Appellant] on August 8, 2018 before the robbery, she observed [he] was wearing "'something red[.]'" ***Id.***, 53-54.

Our review of the record confirms the factual findings by the suppression court were supported in the record. ***See*** N.T. Habeas/Suppression Hearing, 1/14/21, 34-61. We also agree with its legal conclusion that under the "totality of the circumstances in the matter *sub judice* … that Corporal Gallina had sufficient cause to support his claim in the Affidavit of Probable Cause that [Appellant] was one of the perpetrators of this crime." Motions Opinion, 53. Indeed, we agree that the complained of averments "were reasonable inferences supported by evidence known at that time." Trial Court Opinion, 19. We note that contrary to Appellant's complaints, "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most reasonable inference." ***Commonwealth v. Brogdon***, 220 A.3d 592, 599 (Pa. Super. 2019) (quoting

- 10 -

*Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005). Accordingly, Appellant failed to meet his burden to show that Corporal Gallina made a false statement knowingly and intelligently, or that his statement was made with reckless disregard for the truth. **See** Trial Court Opinion, 19. Therefore, the suppression court properly denied suppression.

In his second claim, Appellant argues that the suppression court erred by not suppressing his cell phone and by not properly sealing the warrant. **See** Appellant's Brief, 10. He contends the search warrant, signed by a Chester County judge, pursuant to which his cell phone was seized from CFCF in Philadelphia County violated the requirement that a "search warrant may be issued by any issuing authority within the judicial district wherein is located either the person or place to be searched." Pa.R.Crim.P. 200. Indeed, the court ruled the warrant defective. **See** Appellant's Brief, 10-11; Motions Opinion, 85-87 (search warrant defective because it lacked probable cause based on evidence lawfully obtained). In the meantime, a new warrant, signed by a Philadelphia County magistrate, was obtained, which Appellant argues was also infirm because it was based on the "same facts already ruled upon [by] a Judge of equal jurisdiction," presumably the Philadelphia County court that suppressed the victim's gun recovered from Appellant's possession. **Id.** He contends that the suppression court's denial of suppression, under the inevitable discovery exception, was erroneous because it was based on the warrant for co-defendant's phone, which was identical to the warrant that was

deemed defective, and thus "the same rationale must follow." Appellant's Brief, 11-12.[6]

The two warrants obtained by police to seize and search Appellant's cell phone were deemed defective by the suppression court. Appellant's cell phone was held in Philadelphia after his arrest there. The first warrant was signed by a Chester County judge on August 14, 2018, that is, it was signed by a judge in a different county than the item to be seized pursuant to the warrant. *See* Pa.R.Crim.P. 200; *In re Lackawanna County*, 212 A.3d 1, 13 (Pa. 2019) ("the Rule restricts the territorial jurisdiction in which an issuing authority may issue a search warrant to the judicial district in which the issuing authority sits, the parameters of which are generally the county"). Belatedly realizing the infirmity of the first warrant, the investigating officer obtained a second warrant signed by a Philadelphia magistrate on January 21, 2020. However, that warrant, like the first warrant rested on evidence that was deemed

_____

[6] We note that Appellant provides no argument with respect to the sealing of the warrant and thereby abandons that claim of error. *See Commonwealth v. D'Amato*, 856 A.2d 806, 814 (Pa. 2004) (undeveloped arguments that are the functional equivalent of no argument at all are waived).

In addition, Appellant asserts that the search warrant for his phone "inaccurately states" that: he was "in possession of a gun belonging to the victim;" and the car in which he was stopped belonged to "his 'girlfriend' Renada Myers." Appellant's Brief, 10. He provides no argument to make this aside relevant. Indeed, a gun belonging to the victim was found in the car but was suppressed because the Philadelphia stop and search was deemed unlawful. The gun was not introduced or referred to at the Chester County trial. The car was owned by Renada Myers' brother, which is an immaterial difference.

unlawfully obtained by a Philadelphia judge in a different proceeding, without which, the Commonwealth conceded, probable cause was not demonstrated. See Motions Opinion, 87-88.

Nevertheless, the suppression court denied Appellant's motion with respect to the cell phone and the information obtained from it pursuant to the inevitable discovery exception.[7] Evidence obtained by police through an unlawful search "may only be used against the defendant if knowledge of the evidence is gained from an independent source or the evidence in question would inevitably have been discovered without reference to the police error or misconduct." **Commonwealth v. Fulton**, 179 A.3d 475, 489-90 (Pa. 2018) (citations, quotation marks, and brackets omitted). More specifically, the inevitable discovery exception allows admission of otherwise illegally obtained evidence "[i]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means[.] The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." **Commonwealth v. Bailey**, 986 A.2d 860, 862 (Pa. Super. 2009) (brackets and ellipses omitted); *see also* **Commonwealth v. Gonzalez**, 979 A.2d 879, 890 (Pa. Super. 2009)

_____

[7] "The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." **Murray v. United States**, 487 U.S. 533, 539 (1988) (emphasis in original).

(suppressing evidence in cases where its discovery is inevitable "would reject logic, experience, and common sense") (citation omitted).

The suppression court explained its reasoning as follows:

The search warrants related to Ms. Myers, for which there was ample probable cause, in the form of the victim's narrative and Ms. Myers' admissions to police with regard to her role in the crimes, even absent any allegation or knowledge on the part of the police about [Appellant's] possession of the victim's firearm during his arrest in Philadelphia, showed the phone numbers with which Ms. Myers communicated on the night of the crimes. These numbers included only the victim's phone and [Appellant's] phone. The police would have, as they did, obtained a warrant for the information about [Appellant's] phone maintained by the cellular service provider for that number. They also would have, as they did, obtained a valid search warrant for the cell phone tower dumps. Through this information, they would have been able to discover where the phone traveled that night and that the phone belonged to [Appellant]. Had the Philadelphia police not provided tainted information about [Appellant's] possession of the victim's firearm at the time of his Philadelphia arrest, and even if Corporal Gallina had never received any information from the Philadelphia police regarding [Appellant's] arrest, Corporal Gallina would easily have discovered [Appellant's] whereabouts during the course of his investigation of these crimes. Corporal Gallina then would have obtained a search warrant with adequate probable cause to seize [Appellant's] phone from [CFCF], without any tainted information included. Even if that warrant had been improperly signed by a Chester County jurist, like the present one, there would have been ample probable cause for its issuance and thus the error would have been merely procedural and not fatal. Corporal Gallina would then have obtained a search warrant for a download of the contents of [Appellant's] cell phone. Thus, even if Corporal Gallina had not been privy to the tainted information, or any information for that matter, communicated by the Philadelphia police, Corporal Gallina would inevitably have discovered all of the information secured by the present search warrants directed to [Appellant's] cell phone. It may have taken a bit longer, but the information would have inevitably been obtained.

> Consequently, under the inevitable discovery doctrine, notwithstanding the deficiencies in the August 14, 2018 search warrant for [Appellant's] cell phone, [Appellant] is not entitled to suppression of the evidence derived therefrom.

Motions Opinion, 92-93 (paragraph numbering omitted).

We find that the suppression court compellingly demonstrates the false equivalence in Appellant's assertion that the warrant to seize and search co-defendant Myers' cell phone held the same infirmity as the two warrants for his cell phone. It did not.

"Under the inevitable discovery exception to the exclusionary rule, the fact that challenged evidence was obtained as a result of illegal government conduct does not end the inquiry into whether the evidence was admissible at trial." *Gonzalez*, 979 A.2d at 890. In *Gonzalez*, this court ruled that "a chance meeting" resulted in police recovering, through Gonzalez' voluntary action, cocaine and a large amount of cash from Gonzalez' apartment. *Id.* at 887. We ruled, however, contrary to the suppression court, that "[f]ollowing that production, we believe [Gonzalez] was in the functional equivalent of police custody." *Id.* The police therefore subjected Gonzalez to interrogation without providing constitutional warnings, during which Gonzalez revealed the location of additional narcotics. *Id.* at 882, 889. "Once [Gonzalez] voluntarily produced the contraband on his person, the doctrine of inevitable discovery became applicable since clearly, police ultimately would have discovered the drugs in the drawer and in the closet. *Id.* at 889–890. The discovery was inevitable because "[o]nce [Gonzalez] produced the wad of cash and the bag

of crack cocaine, [the officer] had probable cause to arrest him and had facts supporting issuance of a warrant to search [Gonzalez's] apartment, whereby he inevitably would have discovered the other items of contraband in [Gonzalez's] room. *Id.* at 891. The same reasoning confirms the suppression court's application of the exception here, because the police had a lawful warrant for co-defendant's cell phone, and, from *that* phone, would have acquired all of the information necessary to establish probable cause for Appellant's cell phone and the data from his cell phone provider. We therefore conclude that suppression was properly denied pursuant to the inevitable discovery exception.

In his third claim, Appellant argues that the Commonwealth committed a violation of ***Brady v. Maryland***, 373 U.S. 83 (1963), by not providing him with location and subscriber information, messages sent and received and other details relating to his cell phone and Facebook page. ***See*** Appellant's Brief, 12. He asserts the Commonwealth failed to comply with multiple court orders to produce this information. ***See id.***, 13-16. He contends that this information "would have shown that there was no connection with [Appellant] with the crime for purposes of any suppression motions and/or trial and were therefore necessary for the defense." ***Id.***, 16.

Our standard of review of a ***Brady*** claim is as follows:

a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice

- 16 -

to the defendant. However, the mere possibility that an item of undisclosed information ***might*** have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Roane***, 142 A.3d 79, 88–89 (Pa. Super. 2016) (internal citations, quotation marks and brackets omitted) (quoting ***Commonwealth v. Willis***, 46 A.3d 648, 656 (Pa. 2012) (plurality) (emphasis in original). Moreover, "[t]he burden rests with the defendant to prove by reference to the record, that evidence was withheld or suppressed by the prosecution." ***Commonwealth v. Kinard***, 95 A.3d 279, 289 (Pa. Super. 2014) (*en banc*) (internal quotation marks omitted).

Here, Appellant's ***Brady*** claim is entirely speculative on each element. The trial court explained:

In this matter, we find Appellant has failed to meet his burdens. First, there is no evidence that the Commonwealth failed to disclose evidence. It made requests in search warrants. This is not evidence that it received the information requested. There is also no claim that this requested evidence would be favorable to Appellant's defense or that its omission resulted in prejudice. Appellant makes one general assertion: that had he had this information, he "could have had a better defense." This does not meet Appellant's burden. Moreover, even if this information were available, it is impossible for Appellant to show that a reasonable probability exists that had the evidence been disclosed, the result at trial would have been different. The Commonwealth presented three major points of evidence separate and apart from Appellant's location data: (1) text messages between Appellant and Ms. Myers showing how they planned to execute the home invasion robbery; (2) the victim's testimony that the man who threatened him and beat him with a gun touched his gun safe

during the home invasion; and (3) that a forensic evaluation revealed Appellant's fingerprint on the victim's gun safe. Consequently, we find no **Brady** violation.

Trial Court Opinion, 14 (record citation omitted).

We agree with the trial court's analysis. Appellant has presented no **Brady** information that was not disclosed to him. Therefore, he failed to carry his initial burden. Notably, the premise of the claim appears to be discovery orders issued on behalf of the Commonwealth to third party service providers, not orders that information be produced by the Commonwealth to him. We cannot presume that the Commonwealth obtained **Brady** material that was not turned over. **See Commonwealth v. Towles**, 300 A.3d 400, 416 (Pa. 2023) (with respect to post-conviction review time-bar exception, courts cannot presume a **Brady** violation in the absence of proof of an "ongoing failure to disclose").

Moreover, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." **Roane**, 142 A.3d at 89 (quoting **Commonwealth v. Cam Ly**, 980 A.2d 61, 76 (Pa. 2009)). A "reviewing court is not to review the evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." **Commonwealth v. Dennis**, 17 A.3d 297, 309 (Pa. 2011); **see also Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012). Such review obviously is precluded where the **Brady** material is nonexistent, even though theoretically available from third parties. Appellant thereby could

not and did not demonstrate that any material was actually withheld and, even if obtained by the Commonwealth and not produced, was either favorable to him or material. Therefore, Appellant failed to demonstrate any element of his putative **Brady** claim.

Appellant's fourth and final claim on appeal argues that the sentencing court relied the wrong sentencing guideline ranges because it miscalculated his prior record score ("PRS"). **See** Appellant's Brief, 16-17. He argues that the sentencing court erroneously placed him in the Repeat Violent Offender Category ("REVOC") instead of using a PRS of four. **Id.**, 16. He explains the discrepancy by asserting that under Docket Number CP-51-CR-114301-2000, in which he was convicted in Philadelphia County of robbery, aggravated assault, possessing an instrument of crime ("PIC"), and criminal conspiracy, he was initially sentenced to an aggregate term of 35½ to 65 years' incarceration, but after the matter was returned to the trial court, he was resentenced to an aggregate term of 10 to 20 years' incarceration to run concurrently with the aggregate sentence imposed under CP-51-CR-507241-2001 for convictions of robbery, attempted murder, carrying a firearm without a license and PIC. **See id.**, 16-17. Appellant contends that the sentencing and resentencing under these two docket numbers were consolidated and are therefore "considered to be the same Judicial Proceeding." **Id.**, 17.

Appellant's argument that the court miscalculated his PRS implicates the discretionary aspects of his sentence. **See Commonwealth v. Johnson**, 758 A.2d 1214, 1216 (Pa. Super. 2000) (a "challenge to the calculation of the

Sentencing Guidelines raises a question of the discretionary aspects of a defendant's sentence"); *see also Commonwealth v. Archer*, 722 A.2d 203, 210-211 (Pa. Super. 1998) (*en banc*). "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010) (citation omitted). Rather, an appellant must invoke this Court's jurisdiction. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted). To invoke that jurisdiction, Appellant must satisfy a four-part test, under which we determine:

> (1) whether Appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether Appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.3d at 171.

Here, Appellant failed to invoke our jurisdiction to review his claim on two of the four required points. First, he failed to preserve the claim before the trial court in a motion to reconsider his sentence. As noted above, Appellant did not file a legally cognizable post-sentence motion, as appointed counsel filed a notice of appeal prior to Appellant filing his *pro se* post-sentence motion. *See Commonwealth v. Robinson*, 320 A.3d 732, 736 (Pa. 2024) ("well-established that there is no right to hybrid representation at trial or on appeal"); *Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007) (no right to file a *pro se* post-sentence motion while represented by

counsel). As hybrid representation is not permitted in this Commonwealth, our courts "will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." *Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016).

Second, Appellant failed to include, in a separate section of his brief, a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. *See* Pa.R.A.P. 2119(f). This is a complete bar to our review, and, we note, the Commonwealth objects. *See* Appellee's Brief, 28. Where, as here, "a Rule 2119(f) statement is not included in the appellant's brief and the appellee objects to the omission, then this Court is precluded from reviewing the merits of the appellant's claim." *Commonwealth v. Faulk*, 928 A.2d 1061, 1072 (Pa. Super. 2007); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 19–20 (Pa. 1987) ("separate presentation of these issues is more than mere formalism … [*inter alia*] it furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases"); *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*) (the procedures set out in Pa.R.A.P. 2119(f) are designed to enhance the functioning of appellate review, therefore require "a party appealing from the discretionary aspects of sentence to articulate the manner in which the sentence violates either a particular provision of the sentencing scheme set forth in the Sentencing Code

or a particular fundamental norm underlying the sentencing process" in the required Rule 2119(f) statement). Defendant's challenge to the exercise of the sentencing court's discretion therefore is not reviewable.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/3/2025